UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **INDICTMENT** CR 09-193 PAM/AJB |
| Plaintiff, | ) | |
| | ) | (18 U.S.C. § 2) |
| v. | ) | (18 U.S.C. § 1341) |
| | ) | (18 U.S.C. § 1343) |
| (1) RUSSELL ADAM COLE and | ) | (18 U.S.C. § 1349) |
| | ) | (18 U.S.C. § 1956) |
| (2) ABBY RAE COLE, | ) | (18 U.S.C. § 1957) |
| | ) | |
| Defendants. | ) | |

THE UNITED STATES GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment:

1.    Defendants RUSSELL ADAM COLE and ABBY RAE COLE, husband and wife, owned, controlled, and operated Chip Factory Inc. ("Chip Factory"), a business located in Deerfield, Illinois.  Defendant ABBY COLE was the founder, owner, and CEO of Chip Factory. Defendant RUSSELL COLE was Chip Factory's President.

2.    From at least the early 1990s and continuing through at least August 2007, Chip Factory was a distributor that bought and resold parts for use in the repair of personal computers.

3.    Best Buy Co., Inc. ("Best Buy") is a specialty retailer of home electronics, major appliances, and personal computers. Best Buy's corporate headquarters are located in Richfield, Minnesota.

4.    From at least June 2003 through August 2007, Best Buy was the primary customer of Chip Factory's business, and accounted for the vast majority of Chip Factory's sales.

SCANNED
JUL 2 0 2009
U.S. DISTRICT COURT MPLS

FILED JUL 2 0 2009
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED_____
DEPUTY CLERK'S INTIALS_____

U.S. v. Russell Adam Cole, et al.

5.   Best Buy offered repair services on its products, including personal computers.  From at least 2003 through at least August 2007, most Best Buy computer repairs took place at one of its approximately 12 regional service centers located throughout the United States.

6.   Beginning in the early 2000s, to obtain the parts it needed for customer repairs as quickly as possible and at the lowest possible price, Best Buy devised an automated, online, reverse auction system called the "Parts Procurement Network," or "PPN."  Best Buy worked with an intermediary company (hereafter referred to as the "Intermediary") to run the PPN.

7.   Under the PPN, several times per day participating vendors would receive access to a "needs" file on the PPN server. The needs file was a list of parts and quantities that Best Buy needed to purchase.   Vendors had a short amount of time, approximately one hour, in which to submit bids on the parts they wished to supply.  Vendors then prepared and submitted bid files back to the PPN server, which was maintained by the Intermediary. In their bid files, vendors represented that they had the needed parts in stock, and quoted the price at which they could supply those parts to Best Buy.

8.   After a bidding period ended, the PPN automatically applied a series of business rules, devised by Best Buy, to

<u>U.S. v. Russell Adam Cole, et al.</u>

determine which vendors had won the orders for which parts.   The
business rules were weighted, with the two most heavily-weighted
criteria for winning orders being: (1) parts availability, that is,
the vendor had the parts in stock and could ship them quickly to
Best Buy's regional service centers; and (2) lowest price, that is,
the vendor quoted the lowest price for the parts.   Within a matter
of minutes after the close of bidding, winning vendors received,
via the PPN server, order files identifying the part orders they
had won and at what price.

9.   To bid on a part in the PPN, Best Buy required vendors to
have the part in stock.   Vendors were also required to invoice Best
Buy, via the Intermediary, the quoted price that the vendors
submitted in their bid to win the order.

10.   As part of the PPN, Best Buy agreed to send to winning
vendors the used parts that the vendors had been selected to
replace in the broken computers.   The winning vendors were then
allowed to resell these used parts, called "core" parts, to their
customers.   The right to obtain and resell these core parts, and
retain the profits from these sales, was an additional incentive to
vendors to bid on parts orders in the PPN.

11.   From at least 2002 through in or about August 2007, based
on representations that the defendants made on behalf of Chip

3

<u>U.S. v. Russell Adam Cole, et al.</u>

Factory, Best Buy approved Chip Factory as a vendor that could and did participate in the PPN.

12. Robert Paul Bossany was an employee of Best Buy in Minnesota from at least the mid-1990s through the time of his termination by Best Buy in October 2008. Bossany lived in Savage, Minnesota and later in Prior Lake, Minnesota.

13. From at least 2002 through at least August 2007, Bossany was responsible for managing Best Buy's purchases of computer parts from outside vendors, including Chip Factory, in the PPN. Bossany was involved in selecting which vendors Best Buy approved to participate in the PPN. Bossany was the primary Best Buy point of contact with Chip Factory, as well as with Chip Factory's competing vendors in the PPN. Bossany was also the primary Best Buy corporate point of contact with the Best Buy regional service centers to which vendors were shipping PPN parts.

**COUNT 1**
(Conspiracy to Commit Mail Fraud and Wire Fraud)
18 U.S.C. § 1349

14. The Grand Jury hereby realleges and incorporates paragraphs 1 through 13 of this Indictment as if stated in full herein.

15. From at least December 2002 through in or about November 2008, in the State and District of Minnesota and elsewhere, the defendants,

4

### RUSSELL ADAM COLE and
### ABBY RAE COLE,

did knowingly and intentionally combine, conspire, confederate, and agree with each other, with Robert Paul Bossany, and with others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a.   to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice, to knowingly cause matters, items, and things to be sent and delivered by the United States Postal Service and by commercial interstate carrier, according to the directions thereon, in violation of Title 18, United States Code, Section 1341; and

b.   to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice, to knowingly cause to be transmitted in interstate commerce, by means of wire communications, certain writings, signs, signals, and sounds, in violation of Title 18, United States Code, Section 1343.

5

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means, among others, of this conspiracy were as follows:

16. RUSSELL COLE and ABBY COLE caused Chip Factory fraudulently to misrepresent to Best Buy the nature and size of its business, both in order to become an approved vendor in the PPN, and later to maintain its status as an approved vendor in the PPN.

17. Once Best Buy approved Chip Factory as a vendor in the PPN, RUSSELL COLE and ABBY COLE caused Chip Factory to quote fraudulently low prices in its bids in the PPN, despite having no intention of providing the parts at the quoted price, so that it could win the orders. In addition, and contrary to Chip Factory's misrepresentations in its bids, Chip Factory often did not even have the parts in stock at the time it submitted its bids.

18. After the Intermediary issued winning purchase orders to Chip Factory to supply parts, RUSSELL COLE and ABBY COLE caused Chip Factory fraudulently to invoice Best Buy, through the Intermediary, at inflated prices that were significantly higher than the prices it quoted in its original bids. From approximately June 2003 through August 2007, Chip Factory invoiced and received from Best Buy, through the Intermediary, about $40 million more than its originally-quoted prices.

<u>U.S. v. Russell Adam Cole, et al.</u>

19.  By winning PPN orders through the submission of fraudulently low bid prices, Chip Factory also won the right to receive from Best Buy the "core" part returns, which Chip Factory then resold for a profit.

20.  The defendants repeatedly and secretly gave Bossany large amounts of cash, checks, and property, including gift cards, a motorcycle, an all-terrain vehicle or "ATV," furniture, and clothing.

21.  The defendants sent to Bossany FedEx or UPS envelopes that contained magazines, compact discs, or DVDs into which were inserted cash, checks, or gift cards.  The defendants sent the envelopes to Bossany's home address, rather than to his office at Best Buy, to conceal the fraudulent scheme and its proceeds, and to avoid arousing the suspicions of Bossany's employer and co-workers.

22.  On a number of occasions, Chip Factory employees assisted the defendants in preparing the FedEx or UPS envelopes and sending them to Bossany.  When Chip Factory employees asked RUSSELL COLE what he was sending to Bossany, RUSSELL COLE falsely stated that he and Bossany were in a "book club" or "magazine club," or provided some other false explanation.

23.  While Bossany was regularly receiving cash, checks, and other property from RUSSELL COLE and ABBY COLE, Bossany in return supplied them with internal Best Buy information, including

7

communications concerning the PPN and other PPN vendors that were competitors of Chip Factory, which RUSSELL COLE and ABBY COLE used to Chip Factory's unfair competitive advantage in the PPN.

24.   While Bossany was regularly receiving cash, checks, and other property from RUSSELL COLE and ABBY COLE, Bossany acted within Best Buy and with representatives of the Intermediary to conceal the fraudulent scheme, including to deflect issues and suppress concerns that were being raised about Chip Factory, including issues and concerns about Chip Factory's high part prices, poor part quality, and high return rates.

25.   When Chip Factory won PPN orders for parts that it did not have in stock, RUSSELL COLE caused Chip Factory to purchase new parts from other vendors to fulfill the orders.   However, when the purchased parts arrived, RUSSELL COLE often directed Chip Factory employees not to ship all of them on to Best Buy, but rather directed Chip Factory employees to ship to Best Buy other parts, including parts that RUSSELL COLE knew were used, damaged, or defective, as well as parts that Best Buy had previously returned to Chip Factory for various reasons, including damage or defect. RUSSELL COLE then sold some of the newly-purchased parts on the eBay Internet auction website and retained the revenue.

26.   The defendants caused Chip Factory to keep the payments it received from Best Buy, via the Intermediary, for the used,

<u>U.S. v. Russell Adam Cole, et al.</u>

damaged, or defective parts that it shipped. When Best Buy returned damaged, defective, or unneeded parts to Chip Factory, RUSSELL COLE knowingly caused Chip Factory not to give Best Buy the proper credits to which it was entitled for these returned parts, thereby further enriching Chip Factory at Best Buy's expense.

27. On a number of occasions, RUSSELL COLE, ABBY COLE, and Bossany concealed from Best Buy the existence and nature of the scheme, and provided a variety of false explanations in an effort to keep the scheme going, and to prevent Best Buy and law enforcement from discovering it.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects, the defendants and others committed the following overt acts, among others:

28. On or about December 31, 2002, RUSSELL COLE submitted Chip Factory's response to Best Buy's "Request for Proposal," or "RFP," seeking to gain approved vendor status in the PPN. Chip Factory's response to the Best Buy RFP contained a number of false and material misrepresentations, including overstated figures concerning Chip Factory's annual revenues and number of employees, and a sham organizational chart of purported Chip Factory employees that included personal friends, neighbors, and relatives of RUSSELL COLE and ABBY COLE who were not actually Chip Factory employees.

U.S. v. Russell Adam Cole, et al.

29.  In or about August 2003, the defendants gave Bossany a Harley-Davidson "Fat Boy" motorcycle.

30.  On or about May 21, 2004, the defendants caused a FedEx envelope containing cash, a check, a gift card, or other property to ship in interstate commerce via commercial carrier from Chip Factory in Deerfield, Illinois to Bossany at his home in Savage, Minnesota.

31.  On or about August 24, 2004, in an effort to lull Best Buy colleagues and to keep them from discovering the fraudulent scheme, Bossany forwarded to his superiors an August 24, 2004 email message from RUSSELL COLE as the purported explanation for a bid-to-invoice variance that someone at Best Buy had questioned.

32.  On or about December 28, 2004, the defendants caused a FedEx envelope containing cash, a check, a gift card, or other property to ship in interstate commerce via commercial carrier from Chip Factory in Deerfield, Illinois to Bossany at his home in Prior Lake, Minnesota.

33.  In or about April 2005, RUSSELL COLE gave Bossany a Yamaha "Grizzly" ATV worth approximately $7,000, which RUSSELL COLE paid for with a check drawn on a Chip Factory bank account.

34.  On or about June 8, 2005, the defendants caused a FedEx envelope containing cash, a check, a gift card, or other property to ship in interstate commerce via commercial carrier from Chip

U.S. v. Russell Adam Cole, et al.

Factory in Deerfield, Illinois to Bossany at his home in Prior Lake, Minnesota.

35.  On or about November 2, 2005, the defendants caused a FedEx envelope containing cash, a check, a gift card, or other property to ship in interstate commerce via commercial carrier from Chip Factory in Deerfield, Illinois to Bossany at his home in Prior Lake, Minnesota.

36.  On or about March 16, 2006, the defendants caused a FedEx envelope containing cash, a check, a gift card, or other property to ship in interstate commerce via commercial carrier from Chip Factory in Deerfield, Illinois to Bossany at his home in Prior Lake, Minnesota.

37.  On or about April 3, 2006, the defendants caused a FedEx envelope containing cash, a check, a gift card, or other property to ship in interstate commerce via commercial carrier from Chip Factory in Deerfield, Illinois to Bossany at his home in Prior Lake, Minnesota.

38.  On or about April 20, 2006, the defendants caused a FedEx envelope containing cash, a check, a gift card, or other property to ship in interstate commerce via commercial carrier from Chip Factory in Deerfield, Illinois to Bossany at his home in Prior Lake, Minnesota.

U.S. v. Russell Adam Cole, et al.

39.   On or about May 25, 2006, the defendants caused a FedEx envelope containing cash, a check, a gift card, or other property to ship in interstate commerce via commercial carrier from Chip Factory in Deerfield, Illinois to Bossany at his home in Prior Lake, Minnesota.

40.   On or about June 27, 2006, the defendants caused a FedEx envelope containing cash, a check, a gift card, or other property to ship in interstate commerce via commercial carrier from Chip Factory in Deerfield, Illinois to Bossany at his home in Prior Lake, Minnesota.

41.   On or about August 19, 2006, the defendants caused a FedEx envelope containing cash, a check, a gift card, or other property to ship in interstate commerce via commercial carrier from Chip Factory in Deerfield, Illinois to Bossany at his home in Prior Lake, Minnesota.

42.   On or about December 21, 2006, the defendants caused a FedEx envelope containing cash, a check, a gift card, or other property to ship in interstate commerce via commercial carrier from Chip Factory in Deerfield, Illinois to Bossany at his home in Prior Lake, Minnesota.

43.   On or about January 31, 2007, after a Best Buy employee forwarded to Bossany a report from the Intermediary that reflected

12

<u>U.S. v. Russell Adam Cole, et al.</u>

bid-to-invoice price variances with a small set of Chip Factory's PPN orders:

     a.   Bossany, without the knowledge or approval of his superiors, sent the report by email to RUSSELL COLE.

     b.   Upon learning of the report, RUSSELL COLE instructed Bossany to steer discussion away from Best Buy's analysis of Chip Factory's bid-to-invoice variances during a semi-annual business review meeting between Best Buy and Chip Factory that was to take place the following week.

     c.   At the business review meeting, which took place in Las Vegas, Nevada during the week of February 5, 2007, Bossany followed RUSSELL COLE's instruction and successfully steered discussion away from the bid-to-invoice variance analysis.

    44.   On or about February 16, 2007, the defendants caused a FedEx envelope containing cash, a check, a gift card, or other property to ship in interstate commerce via commercial carrier from Chip Factory in Deerfield, Illinois to Bossany at his home in Prior Lake, Minnesota.

    45.   On or about May 18, 2007, the defendants caused a FedEx envelope containing cash, a check, a gift card, or other property to ship in interstate commerce via commercial carrier from Chip Factory in Deerfield, Illinois to Bossany at his home in Prior Lake, Minnesota.

U.S. v. Russell Adam Cole, et al.

46. On or about the following dates, the defendants caused Chip Factory to participate in PPN auctions and submit bids that quoted fraudulently-low prices for parts that Best Buy needed, knowing that they would later invoice Best Buy, through the Intermediary, at fraudulently-inflated prices:

| PART TYPE | BID DATE | PRICE QUOTED IN BID | PRICE INVOICED |
|---|---|---|---|
| Compaq LCD screen | 6/6/2003 | $69.00 | $1,169.00 |
| Compaq motherboards | 6/16/2003 | $394.00 | $894.00 |
| Compaq LCD screen | 6/18/2003 | $379.00 | $879.00 |
| Compaq batteries | 6/23/2003 | $117.00 | $217.00 |
| eMachines motherboards | 2/26/2004 | $1.00 | $385.00 |
| Compaq LCD screens | 4/1/2004 | $1.00 | $875.00 |
| Compaq system boards | 4/8/2004 | $1.00 | $825.00 |
| Compaq motherboard | 4/13/2004 | $1.00 | $850.00 |
| 40GB laptop hard drives | 10/5/2004 | $27.00 | $175.00 |
| 80GB desktop hard drives | 8/30/2005 | $12.00 | $119.00 |
| Hewlett-Packard motherboards | 9/2/2005 | $45.00 | $589.00 |
| 30GB laptop hard drives | 9/2/2005 | $13.00 | $135.00 |
| 300W power supplies | 5/31/2005 | $6.89 | $49.00 |
| eMachines mainboards | 6/7/2006 | $15.00 | $374.00 |
| 300W power supplies | 6/7/2006 | $5.15 | $49.00 |
| 300W power supplies | 2/13/2007 | $5.15 | $44.00 |

U.S. v. Russell Adam Cole, et al.

| PART TYPE | BID DATE | PRICE QUOTED IN BID | PRICE INVOICED |
|---|---|---|---|
| 200GB hard drives | 2/27/2007 | $13.00 | $99.00 |
| 200GB hard drives | 2/27/2007 | $12.00 | $109.00 |

47. On or about November 18, 2008, approximately one month after Best Buy terminated Bossany's employment, RUSSELL COLE, believing that Best Buy investigators had discovered the cash, checks, and other property that RUSSELL COLE and ABBY COLE sent to Bossany, sent an email message to Bossany entitled "Loan," the purpose of which was to characterize falsely that the prior payments the defendants made to Bossany were loans.

48. On or about November 20, 2008, at RUSSELL COLE's direction, Bossany mailed to RUSSELL COLE a handwritten bill of sale for the same Harley-Davidson motorcycle that the defendants had given to Bossany about five years earlier. The purpose of the bill of sale was to make it appear falsely as if Bossany was reselling the motorcycle back to the defendants, and to characterize falsely the defendants' past payments to Bossany as payments to repurchase the motorcycle.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-13
### (Mail Fraud)
### 18 U.S.C. § 1341

49.   The   Grand   Jury   hereby   realleges   and   incorporates
paragraphs 1 through 13 and 16 through 48 of this Indictment as if
stated in full herein.

50.   From at least December 2002 through in or about November
2008, in the State and District of Minnesota and elsewhere, the
defendants,

**RUSSELL ADAM COLE and**
**ABBY RAE COLE,**

aiding and abetting each other, and aided and abetted by others
known and unknown to the Grand Jury, including Robert Paul Bossany,
did knowingly and intentionally devise a scheme and artifice to
defraud Best Buy and to obtain millions of dollars in money and
property from Best Buy by means of false and fraudulent pretenses,
representations, and promises.

51.   On or about the dates set forth below, in the State and
District of Minnesota and elsewhere, and for the purpose of
executing and attempting to execute the scheme and artifice to
defraud, the defendants,

**RUSSELL ADAM COLE and**
**ABBY RAE COLE,**

aiding and abetting each other, and aided and abetted by others
known and unknown to the Grand Jury, including Robert Paul Bossany,

<u>U.S. v. Russell Adam Cole, et al.</u>

knowingly caused to be sent, delivered, and moved by the United States Postal Service and by commercial interstate carriers, according to the directions thereon, various matters, items, and things, as described below:

| COUNT | DATE | MAILING |
|-------|------|---------|
| 2 | Dec. 28, 2004 | FedEx envelope sent from Chip Factory in Deerfield, Illinois to Bossany in Prior Lake, Minnesota |
| 3 | June 8, 2005 | FedEx envelope sent from Chip Factory in Deerfield, Illinois to Bossany in Prior Lake, Minnesota |
| 4 | Nov. 2, 2005 | FedEx envelope sent from Chip Factory in Deerfield, Illinois to Bossany in Prior Lake, Minnesota |
| 5 | Mar. 16, 2006 | FedEx envelope sent from Chip Factory in Deerfield, Illinois to Bossany in Prior Lake, Minnesota |
| 6 | April 3, 2006 | FedEx envelope sent from Chip Factory in Deerfield, Illinois to Bossany in Prior Lake, Minnesota |
| 7 | April 20, 2006 | FedEx envelope sent from Chip Factory in Deerfield, Illinois to Bossany in Prior Lake, Minnesota |
| 8 | May 25, 2006 | FedEx envelope sent from Chip Factory in Deerfield, Illinois to Bossany in Prior Lake, Minnesota |
| 9 | June 27, 2006 | FedEx envelope sent from Chip Factory in Deerfield, Illinois to Bossany in Prior Lake, Minnesota |
| 10 | Aug. 19, 2006 | FedEx envelope sent from Chip Factory in Deerfield, Illinois to Bossany in Prior Lake, Minnesota |

U.S. v. Russell Adam Cole, et al.

| COUNT | DATE | MAILING |
|-------|------|---------|
| 11 | Dec. 21, 2006 | FedEx envelope sent from Chip Factory in Deerfield, Illinois to Bossany in Prior Lake, Minnesota |
| 12 | Feb. 16, 2007 | FedEx envelope sent from Chip Factory in Deerfield, Illinois to Bossany in Prior Lake, Minnesota |
| 13 | May 18, 2007 | FedEx envelope sent from Chip Factory in Deerfield, Illinois to Bossany in Prior Lake, Minnesota |

All in violation of Title 18, United States Code, Sections 1341 and 2.

**COUNTS 14-19**
(Wire Fraud)
18 U.S.C. § 1343

52. The Grand Jury hereby realleges and incorporates paragraphs 1 through 13 and 16 through 48 of this Indictment as if stated in full herein.

53. From at least December 2002 through in or about November 2008, in the State and District of Minnesota and elsewhere, the defendants,

**RUSSELL ADAM COLE and
ABBY RAE COLE,**

aiding and abetting each other, and aided and abetted by others known and unknown to the Grand Jury, including Robert Paul Bossany, did knowingly and intentionally devise a scheme and artifice to

18

U.S. v. Russell Adam Cole, et al.

defraud Best Buy and to obtain millions of dollars in money and
property from Best Buy by means of false and fraudulent pretenses,
representations, and promises.

54.   On or about the dates set forth below, in the State and
District of Minnesota and elsewhere, and for the purpose of
executing and attempting to execute the scheme and artifice, the
defendants,

**RUSSELL ADAM COLE and**
**ABBY RAE COLE,**

aiding and abetting each other, and aided and abetted by others
known and unknown to the Grand Jury, including Robert Paul Bossany,
by means of interstate wire communications, did knowingly cause to
be transmitted in interstate commerce numerous writings, signals,
and sounds, including the interstate wire communications described
below:

| COUNT | DATE | WIRE |
|-------|------|------|
| 14 | July 26, 2007 | Email from defendant RUSSELL COLE in Illinois to Bossany in Minnesota |
| 15 | Aug. 16, 2007 | Telephone call between defendant RUSSELL COLE in Illinois and Bossany in Minnesota |
| 16 | Nov. 14, 2008 | Telephone call between defendants RUSSELL COLE and ABBY COLE in Illinois and Bossany in Minnesota |

U.S. v. Russell Adam Cole, et al.

| COUNT | DATE | WIRE |
|-------|------|------|
| 17 | Nov. 16, 2008 | Telephone call between defendant RUSSELL COLE in Illinois and Bossany in Minnesota |
| 18 | Nov. 18, 2008 | Email from defendant RUSSELL COLE in Illinois to Bossany in Minnesota |
| 19 | Nov. 23, 2008 | Email from defendant RUSSELL COLE in Illinois to Bossany in Minnesota |

All in violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT 20
(Conspiracy to Commit Money Laundering)
18 U.S.C. 1956(h)

55. The Grand Jury hereby realleges and incorporates paragraphs 1 through 13 and 16 through 48 of this Indictment as if stated in full herein.

56. From at least December 2002 through in or about November 2008, in the State and District of Minnesota and elsewhere, the defendants,

**RUSSELL ADAM COLE and
ABBY RAE COLE,**

did knowingly and intentionally combine, conspire, confederate, and agree with each other, with Robert Paul Bossany, and with others known and unknown to the Grand Jury, to commit offenses against the

<u>U.S. v. Russell Adam Cole, et al.</u>

United States in violation of Title 18, United States Code, Section 1956, that is:

a.    to   knowingly   conduct   and   attempt   to   conduct financial transactions, that is, payment by check of funds, affecting interstate commerce which involved the proceeds of a specified unlawful activity, that is, mail and wire fraud, knowing   that   the   property   involved   in   the   financial transactions represented the proceeds of some form of illegal activity, with the intent to promote the carrying on of specified unlawful activity, that is, mail fraud and wire fraud, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

b.    to   knowingly   conduct   and   attempt   to   conduct financial transactions, that is, payment by check of funds, affecting interstate commerce which involved the proceeds of a specified unlawful activity, that is, mail fraud and wire fraud, knowing that the property involved in the financial transactions represented the proceeds of some form of illegal activity and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of a specified unlawful activity, that is, mail and

21

<u>U.S. v. Russell Adam Cole, et al.</u>

wire fraud, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means, among others, of this conspiracy were as follows:

57.  At various points throughout the duration of the mail fraud and wire fraud conspiracy and scheme described above in Counts 1 through 19, the defendants caused the fraud proceeds to be transferred from Best Buy in Minnesota, through the Intermediary, to Chip Factory in Illinois.

58.  Thereafter, on a number of occasions, the defendants arranged to have portions of the fraud proceeds, in the form of cash, checks, and property, delivered to Robert Paul Bossany.  In particular, Bossany deposited some of the checks that were drawn on the defendants' bank accounts.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects, the defendants and others committed the following overt acts, among others:

59.  On or about September 30, 2005, the defendants delivered Bossany a check, in the amount of $800, from a bank account held in the name of RUSSELL COLE and ABBY COLE at Cole Taylor Bank.

22

U.S. v. Russell Adam Cole, et al.

60.   On or about November 4, 2005, the defendants delivered Bossany a check, in the amount of $1,000, from a bank account held in the name of RUSSELL COLE and ABBY COLE d/b/a CFI Direct at Cole Taylor Bank.

61.   On or about November 23, 2005, the defendants delivered Bossany a check, in the amount of $800, from a bank account held in the name of RUSSELL COLE and ABBY COLE at Cole Taylor Bank.

62.   On or about February 28, 2006, the defendants delivered Bossany a check, in the amount of $1,000, from a bank account held in the name of RUSSELL COLE and ABBY COLE d/b/a CFI Direct at Cole Taylor Bank.

63.   On or about March 16, 2006, the defendants delivered Bossany a check, in the amount of $1,000, from a bank account held in the name of RUSSELL COLE and ABBY COLE at Cole Taylor Bank.

64.   On or about March 31, 2006, the defendants delivered Bossany a check, in the amount of $2,000, from a bank account held in the name of RUSSELL COLE and ABBY COLE d/b/a CFI Direct at Cole Taylor Bank.

65.   On or about April 6, 2006, the defendants delivered Bossany a check, in the amount of $3,000, from a bank account held in the name of Chip Factory, Inc. at Cole Taylor Bank.

<u>U.S. v. Russell Adam Cole, et al.</u>

66. On or about April 18, 2006, the defendants delivered Bossany a check, in the amount of $1,000, from a bank account held in the name of RUSSELL COLE and ABBY COLE d/b/a CFI Direct at Cole Taylor Bank.

67. On or about May 10, 2006, the defendants delivered Bossany a check, payable to "cash," in the amount of $5,000, from a bank account held in the name of Chip Factory, Inc. at Cole Taylor Bank.

68. On or about May 18, 2006, the defendants delivered Bossany a check, in the amount of $1,000, from a bank account held in the name of RUSSELL COLE and ABBY COLE at Cole Taylor Bank.

69. On or about June 2, 2006, the defendants delivered Bossany a check, in the amount of $1,200, from a bank account held in the name of RUSSELL COLE and ABBY COLE d/b/a CFI Direct at Cole Taylor Bank.

70. On or about June 8, 2006, the defendants delivered Bossany a check, in the amount of $8,000, from a bank account held in the name of RUSSELL COLE and ABBY COLE at Cole Taylor Bank.

71. On or about June 26, 2006, the defendants delivered Bossany a check, in the amount of $1,000, from a bank account held in the name of RUSSELL COLE and ABBY COLE d/b/a CFI Direct at Cole Taylor Bank.

U.S. v. Russell Adam Cole, et al.

72.  On or about August 17, 2006, the defendants delivered Bossany a check, in the amount of $8,000, from a bank account held in the name of Chip Factory, Inc. at Cole Taylor Bank.

73.  On or about December 21, 2006, the defendants delivered Bossany a Cole Taylor Bank cashier's check, payable to the order of Bob Bossany, in the amount of $10,000.

74.  On or about February 10, 2007, the defendants delivered Bossany a check, payable to "cash," in the amount of $4,500, from a bank account held in the name of RUSSELL COLE and ABBY COLE at Cole Taylor Bank.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNT 21
(Transactional Money Laundering)
18 U.S.C. § 1957

75.  The Grand Jury hereby realleges and incorporates paragraphs 1 through 13, 16 through 48, and 57 through 74 of this Indictment as if stated in full herein.

76.  On or about November 20, 2006, in the State and District of Minnesota and elsewhere, the defendants,

25

**RUSSELL ADAM COLE and**
**ABBY RAE COLE,**

aiding and abetting each other, and aided and abetted by others,
did knowingly engage and attempt to engage in a monetary
transaction by, through, and to a financial institution, affecting
interstate commerce, in criminally-derived property of a value
greater than $10,000, that is, payment by check of funds in the
amount of $190,000, from a Cole Taylor Bank account held in the
name of Chip Factory, Inc., to Chicago Title Insurance Company, for
the purchase of a home to be built at 216 Kenmore Avenue,
Deerfield, Illinois, such property having been derived from mail
fraud and wire fraud.

All in violation of Title 18, United States Code, Sections
1957 and 2.

## FORFEITURE ALLEGATIONS

77. The Grand Jury hereby realleges and incorporates
paragraphs 1 through 76 of this Indictment as if stated in full
herein.

78. Counts 1 through 21 of this Indictment are hereby
realleged and incorporated as if fully set forth herein by
reference, for the purpose of alleging forfeitures pursuant to

26

<u>U.S. v. Russell Adam Cole, et al.</u>

Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

79.   As the result of the offenses alleged in Counts 1 through 19 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations alleged in Counts 1 through 19 of this Indictment, including the following property:

> a.   2001 Cobra 2 Door, VIN IA031797;
>
> b.   2002 Aston-Martin 2 Door, VIN SCFAC23392B500230;
>
> c.   2005 Ferrari Coupe, VIN ZFFEW58A750142935;
>
> d.   2003 Ferrari ENZO Coupe, VIN ZFFCW56A630133019;
>
> e.   2005 Porsche 911 Coupe, VIN WP0AB29915S696066;
>
> f.   2006 Lexus SC430 Convertible, VIN JTHFN48Y569001094;
>
> g.   2005 Ford GT 2 Door, VIN 1FAFP90SX5Y401257;
>
> h.   2008 Bentley GTC Convertible, VIN SCBDR33W28C058035;
>
> i.   2006 Porsche Cayenne, VIN WP1AB29P06LA68220;
>
> j.   2008 Mercedes Benz, S550 4 Door, VIN WDDNG71X48A204169;

27

<u>U.S. v. Russell Adam Cole, et al.</u>

     k.    2006   Lamborghini   Murcielago   Convertible,  VIN ZHWBU26S36LA01940;

     l.    all funds contained in TD Ameritrade Account No. 909-313-120, to include $4,745,409.84 in funds seized to date, and any future redemptions until the account is fully liquidated;

     m.    LaSalle Bank Certificate of Deposit No. 480705549-8, in the amount of $2,000,883.29;

     n.    $1,520,694.66 and $279,275.00 seized from TD Ameritrade, Account No. 882-302737;

     o.    $145,779.27 seized from TD Ameritrade, Account No. 901-021342;

     p.    all funds contained in "Iron Absolute Return Onshore Feeder Fund for the Benefit of Russell and Abby Cole," up to $480,000.00, to include $220,501.27 in redemptions seized to date, and any future redemptions until the account is fully liquidated;

     q.    $14,250 in cash seized from 216 Kenmore Avenue, Deerfield, Illinois;

     r.    the real property known as 216 Kenmore Avenue, Deerfield, Illinois, with all appurtenances, improvements, and attachments thereon; and

<u>U.S. v. Russell Adam Cole, et al.</u>

s.   the real property known as 950 Bristol Drive, Deerfield, Illinois, with all appurtenances, improvements, and attachments thereon.

80.   As a result of the offenses alleged in Counts 20 and 21 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses, or any property traceable to such property, including the real property known as 216 Kenmore Avenue, Deerfield, Illinois, with all appurtenances, improvements, and attachments thereon.

81.   If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and by Title 28, United States Code, Section 2461(c), including but not limited to the property specifically identified in paragraph 82.

A TRUE BILL

| | |
|---|---|
| UNITED STATES ATTORNEY | FOREPERSON |